## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK WALKER** | **CIVIL ACTION** |
| **VERSUS** | **NO:  12-2521** |
| **MARLIN GUSMAN, ET AL.** | **SECTION: "S" (3)** |

### ORDER AND REASONS

      **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on his Official Capacity Claims (Doc. #305) is **DENIED**.

      **IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss plaintiff's claims against Tyrone Williams, Curtis Lumar, Nurse David Oates, Krystal Lacking, Kevin Talley, Hazel Bowser and Michael Laughlin (Doc. #320) is **GRANTED**, and plaintiff's claims against those defendants are **DISMISSED WITH PREJUDICE**.

### BACKGROUND

      This matter is before the court on plaintiff's motion for partial summary judgment on his official capacity claims.  Plaintiff argues that the defendants in their official capacities should be estopped from litigating whether the conditions at the Orleans Parish Prison ("OPP") were unconstitutional because in the Order Approving Consent Judgment and Certifying Settlement Class in Jones v. Gusman, Civil Action No. 12-859 c/w 12-138 (E.D. La. 6/6/2013), Judge Lance Africk found that unconstitutional conditions existed at the prison during plaintiff's incarceration.  Also before the court is defendants' motion to dismiss plaintiff's claims against Tyrone Williams, Curtis Lumar, Nurse David Oates, Krystal Lacking,[1] Kevin Talley, Hazel Bowser and Michael Laughlin. Plaintiff added these defendants in his Second Amended Complaint, filed on December 1, 2014.

---

[1] Plaintiff agrees that his claims against Lacking should be dismissed because she was not employed at OPP during the relevant time. See Doc. #336.

Defendants argue that the claims against these defendants should be dismissed because they are untimely, prejudicial and futile.

Plaintiff, Mark Walker, was incarcerated at OPP from October 2011 to April 3, 2012. During most of this time, he was a pretrial detainee.  He was transferred into the custody of the Louisiana Department of Corrections seven days after his conviction, and is currently incarcerated at Rayburn Correctional Center in Angie, Louisiana.  On October 15, 2012, Walker, acting pro se, filed this action against Sheriff Marlin Gusman, Kevin Winfield, Charles Ezeb, Samuel Gore, Charles Higgins, Carlos Louque, and "Sgt. John Doe, Supervisor tents," in their official and individual capacities, alleging various constitutional violations, claims under the Americans with Disabilities Act, and claims under Louisiana state law.

On December 3, 2012, Walker filed a "Motion for Discovery," seeking a "listing of all employee[s] who worked in Walker's immediate housing locations, as well as supervisors and shift commanders described by date, time and location[,]" and the "names of all medical personel[] including nurses" who provided medical services to Walker.  Defendants objected to the discovery requests claiming that they did not know if the questions were requests for documents or interrogatories, and that the discovery requests were over-broad, unreasonable and unduly burdensome.

On March 27, 2013, Walker filed a motion for leave to file an amended complaint.  He stated that he had "requested proper names and spelling [for] both Sgt. [Lumar] as well as other identities of potential witness[es] or defendants, as to amend original complaint, Defense counsel has failed

to provide said information and Plaintiff amends accordingly."  The United States Magistrate Judge denied the motion as premature because Walker had not submitted the proposed amendments.

On April 8, 2013, Walker filed a motion to amend the complaint which sought to add John Doe defendants.  On April 11, 2013, the United States Magistrate Judge denied the motion finding that Walker was " no longer entitled to amend his complaint as a matter of course" and that "justice does not require that the Court allow plaintiff to amend the complaint in the manner proposed at this late stage of the proceeding."

On April 29, 2013, Walker filed a Potential Witness List.  The list included, in pertinent part:

*       *       *

(8) <u>Sgt. ? Lumer</u> - May testify to anything and everything that Plaintiff chooses to advance with relevance to this suit, conditions of confinement, policies, staff behavior and such, AS DEFENDANTS HAVE TURNED OVER ABSOLUTELY NO DISCOVERY ON OR REFERENCING THIS INDIVIDUAL IN VIOLATION OF COURTS RULES, SO PLAINTIFF CAN PREPARE FOR TRIAL.

*       *       *

(12) <u>Mole Sgt ? Williams</u> - May testify to facts related to the incidents that are subject of this suit, including his own actions, plaintiffs condition, behavior, inmate conditions of confinement action before or after the incidents he observed, or were reported to him, knowledge of jail policies and procedures, other relevant inmate or staff behavior as well as prison medical and prison officials responses, lack of responses, or behavior;

DEFENDANTS HAVE REFUSED TO TURN OVER ANY IDENTIFYING INFORMATION DIRECTLY REQUESTED BY PLAINTIFF, THIS SGT HAS BEEN A DAY SHIFT SGT ON THE 10TH FLOOR, HOD FOR MAY YEARS;

*       *       *

3

(16)  <u>SOD Detective Kevin Talley</u> - who may testify to facts related to that are subject to this suit, plaintiffs allegations specifically regarding his own actions as well as any relevant information regarding condition behavior, and actions before and after the incidents which he directly observed or were reported to him during the course of any investigations that were conducted by SOD, as well as the results of those investigations, or any other investigations that add foundation to this suit;

(17)  <u>SOD Detective Hazel Bowser</u> - who may testify to facts related to that are subject to this suit, plaintiffs allegations specifically regarding her actions as well as any relevant information regarding plaintiffs condition, behavior, and actions before and after the incidents which she directly observed or were reported to her during the course of any investigations that were conducted by SOD, as well as the results of those investigations or any other investigations that add foundation to this suit;

(18)  <u>SOD Det. Major Michael Loughlin</u> - who may testify to facts related to that are subject to this suit, plaintiffs allegations specifically regarding his actions as well as any relevant information regarding plaintiffs condition, behavior, and actions before and after the incidents which he directly observed or were reported to him during the course of any investigations that were conducted by SOD, as well as the results of these investigations or any other investigations that add foundation to this suit;

(19)  <u>Nurse D. Oats</u> - may testify to facts related to the incidents that are the subject of this suit, including his own actions, plaintiffs condition, behavior and actions before and after the incidents, including his actions, and or which he observed directly or were reported to him, as well as prisons medical responses, and or responses or actions of prison officials or personnel;

Thereafter, defendants' counsel wrote to Walker:

It has come to our attention by your recent Court filings that you are apparently requesting the first names of two previously listed defense witnesses.  Please find that information below.

Sgt. James Tyler
Sgt. Curtis Lumar.

4

On June 6, 2013, Walker filed another motion for leave to file an amended complaint. Walker argued that he still was unable to identify the proper names of Sergeant Lumar and other defendants because defendants did not answer his discovery requests. He sought to add "Jon Doe(s) 1-20" and "Jane Doe(s) 1-20" as defendants.

On September 21, 2013, the court amended the Scheduling Order to permit amendments to pleadings by October 15, 2013. On September 23, 2013, the United States Magistrate Judge granted Walker's June 6, 2013, motion to amend the complaint, but denied Walker's motion to compel discovery, including Walker's requests for "the names of all employees and inmates present at [certain] locations during [certain] periods."

On January 6, 2014, Walker filed another witness list that included "Sgt. Curtis Lumer," "Mole Sgt. ? Williams," "SOD Dectective Kevin Talley," "SOD Detective Hazel Bowser," "SOD Det. Major Michael Loughlin" and "Nurse D. Oats." On February 10, 2014, Walker filed a motion for leave to amend the complaint to replace John and Jane Does defendants with "Sgt. Numar," "Sgt. Tyrone Williams," "Deputy Kevin Talley," "Mjr Michael Loughlin," "Deputy Krystel Lacking," "Deputy Hazel Bowser," and "Nurse D. Oates." Walker argued that he was previously unable to identify these defendants because of the other defendants' lack of responsiveness to his discovery requests. On February 24, 2014, Walker filed a motion to add Sgt. Curtis Lumar as a defendant arguing that the defendants failed to properly identify him.

In July 2014, the court appointed pro bono counsel to represent Walker. On October 1, 2014, the court heard oral argument on all pending motions, including Walker's February 10 and February 24, 2014, motions to amend the complaint. The court denied the motions without prejudice, but

granted Walker leave to file an amended complaint, and thereafter for the newly added defendants to file a motion to dismiss.

On December 1, 2014, Walker filed his Second Amended Complaint.  He alleged that various defendants in their official or individual capacities violated his Constitutional rights protected by the Eighth and Fourteenth Amendments by failing to protect him from assaults by other inmates, subjecting him to the use of excessive force by Lumar, providing inadequate medical care, and subjecting him to unconstitutional environmental conditions.  Walker also alleges that Gusman, Winfield, Ezeb, Louque, Williams, Dr. Gore and John or Jane Does violated the Americans with Disabilities Act by failing to provide a Bible to accommodate his vision impairment and failing to provide accommodations for his psychiatric conditions.  Further, Walker alleges that Gusman, Magee and John or Jane Does violated Louisiana law by failing to return $40 to Walker that was in his inmate account, and stealing gift cards that were in his wallet when he was initially incarcerated.

On January 7, 2015, Walker filed a motion for partial summary judgment arguing that the Order Approving Consent Judgment and Certifying Settlement Class in Jones v. Gusman, Civil Action No. 12-859 c/w 12-138 (E.D. La. 6/6/2013), should have issue preclusive effect to prevent defendants from litigating whether the conditions at OPP were unconstitutional. On April 2, 2012, a class of OPP inmates, including Walker as a named plaintiff, filed Jones alleging violations of their Eighth and Fourteenth Amendment rights guaranteed by the Constitution of the United States.[2]  The

---

[2]  Walker was originally represented by attorneys from the Southern Poverty Law Center and the MacArthur Justice Center.  While represented, Walker submitted some pleadings on his own behalf, including a motion requesting that the court consider his comments on the proposed settlement.  After the Consent Judgment was approved, Walker moved to "sever" the attorney-client relationship.  The court granted the motion and Walker then proceeded pro se in Jones.

lawsuit sought the prospective relief of reforms at OPP under the Prison Litigation Reform Act, 18 U.S.C. § 3626.

The plaintiffs, the United States of America and the plaintiff class, and defendants entered into a settlement the terms of which were set forth in a document titled "Consent Judgment."  Jones, Civil Action No. 12-859 c/w 12-138, Doc. # 466 (E.D. La. 6/6/2013).  The Consent Judgment stated that the plaintiff class consisted of "all individuals who are now or will be imprisoned in OPP." Id. The parties to the Consent Judgment sought entry of a consent decree by the court adopting the prospective relief outlined therein.  The PLRA requires:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).  The Consent Judgment specified:

> The Parties stipulate that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a).  The Parties further stipulate and agree and the court finds that the prospective relief in this Agreement is narrowly drawn, extends no further than necessary to correct the violations of federal rights as alleged by Plaintiffs in the Complaints, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the Parties agree and represent that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a).  Any admission made for the purposes of this Agreement is not admissible if presented by Third Parties in another proceeding.

Jones, Civil Action No. 12-859 c/w 12-138, Doc. # 466 (E.D. La. 6/6/2013).

After a fairness hearing at which both sides presented evidence, Judge Africk adopted the Consent Judgment finding that there were violations of federal Constitutional rights at OPP, and the Consent Judgment complied with the PLRA. Jones v. Gusman, 296 F.R.D. 416 (E.D. La. 6/6/2013). In his order, Judge Africk noted several constitutional violations at OPP, including insufficient security against physical and sexual assault, improper use of force by prison officials, deficient medical and mental health care, and deficient environmental conditions. See id. Walker argues that he is entitled to use Judge Africk's findings in adopting the Consent Judgment in Jones to collaterally estop defendants from litigating whether unconstitutional conditions existed at OPP, and that the only remaining issues are causation and his damages.[3] Defendants argue that the Jones order cannot be used for issue preclusion in this action because it is not a judgment entered after the parties fully litigated the issues.

On February 23, 2015, defendants filed a motion to dismiss Walker's claims against Tyrone Williams, Curtis Lumar, Nurse David Oates, Krystal Lacking, Kevin Talley, Hazel Bowser and Michael Laughlin, arguing that the claims against these defendants are untimely, prejudicial and futile. Specifically, defendants argue that Walker's claims against these defendants, which he brings in his Second Amended Complaint, are time-barred. Walker argues that the claims are not untimely and equitable tolling should apply because he attempted to discover these defendants' identities since the beginning of this litigation, but defendants did not adequately respond to his discovery requests.

---

[3]  In Jones, 296 F.R.D. at 469, Judge Africk noted that the consent judgment does not address financial compensation, but "the proposed consent judgment does not limit the ability of inmates to bring claims for damages and the complaint never sought such damages." Judge Africk also stated that "as an inherent part of a settlement, as opposed to a matter litigated through a full trial," the consent decree did not require a plain admission of liability by the sheriff. Id. at 463.

## ANALYSIS

**A.      Walker's Motion for Partial Summary Judgment**

**1.   Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).  The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of

evidence supporting the essential elements of the opposing party's case. <u>Saunders v. Michelin Tire Corp.</u>, 942 F.2d 299, 301 (5th Cir. 1991).

**2. Collateral Estoppel**

Walker argues that the findings of constitutional violations related to security against physical and sexual assault, improper use of force by prison officials, deficient medical and mental health care, and deficient environmental conditions included in the Order Approving Consent Judgment and Certifying Settlement Class in <u>Jones</u> collaterally estop defendants in this action from litigating those issues.

Collateral Estoppel or "issue preclusion" is a type of res judicata that "recognizes that suits addressed to particular claims may present issues relevant to suits on other claims." <u>Kaspar Wire Works, Inc. v. Leco Eng'g an Mach., Inc.</u>, 575 F.2d 530, 535 (5th Cir. 1978). "[I]ssue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." <u>Id.</u> at 535-36. Judicial finality, which "arises only from a final decision rendered after the parties have been given a reasonable opportunity to litigate a claim before a court of competent jurisdiction", is required for the application of res judicata. <u>Id.</u> at 537-38. "Thus, if the parties to a suit enter into an extrajudicial settlement or compromise, there is no judgment, and future litigation is not barred by res judicata or collateral estoppel[.]" <u>Id.</u> at 538.

Litigants sometimes seek a "judicial blessing for their [settlement] contract" in the form of a consent decree. <u>Id.</u> A consent decree is a contract between the parties thereto, but obtaining a consent decree allows the parties "to obtain not only greater finality for their compact but judicial sanctions for its enforcement[.]" <u>Id.</u> "Although the court must approve a consent decree, in so doing it does not inquire into the precise legal rights of the respective parties, but only assures itself that

there has been valid consent by the concerned parties and that the terms of the decree are not unlawful, unreasonable, or inequitable." United States v. City of Jackson, Miss., 519 F.2d 1147, 1151 (5th Cir. 1975).  Consent decrees allow the parties to reach an agreement regarding the specifics of substantial compliance while avoiding "the risks as well as costs of full scale litigation of each point." Id. at 1151-52.  It is a compromise, "rather than an attempt to precisely delineate legal rights." Id. at 1152.  Thus, "such decrees do not purport to be definitive statements of the parties' legal rights and [courts] will accord them little or no weight in the determination of the rights of persons not party to them." Id. at 1152.

With respect to the issue preclusive effect of consent judgments on future litigation between the parties thereto, "because the purpose of a consent decree is typically to avoid the litigation of any issue[,] . . . the rule of (issue preclusion) does not apply with respect to any issue in a subsequent action[,]" unless "the parties have entered an agreement manifesting such intention." Kaspar Wire Works, 575 F.2d at 539.  Thus, when determining the issue preclusion effect afforded to a consent decree, the court considers the parties' "intention with respect to the finality to be accorded the decree as reflected by the record and the words of their agreement." Id. at 540.

Walker argues that the PLRA requires a judicial finding of constitutional violations, thus the Consent Judgment should have issue preclusive effect as to the constitutional violations noted by Judge Africk in the Order Approving Consent Judgment and Certifying Settlement Class. Essentially, Walker argues that a consent decree entered under the PLRA should be an exception to the rule that a consent decree does not have issue preclusive effect absent the parties agreement thereto because the PLRA requires a judicial finding of constitutional violations for the adoption of a consent decree.

11

The Consent Judgment states that its parties are the "Plaintiff class, the United States of America, acting through the United States Department of Justice; and the Orleans Parish Sheriff (in his official capacity)."  The parties to the Consent Judgment agreed " to a settlement class comprised of all individuals who are now or will be imprisoned in OPP."  Walker was a named plaintiff in Jones, which was filed on April 2, 2012.  Walker was transferred out of OPP the next day, on April 3, 2012.  By definition, Walker is not a member of the settlement class, and thus not a party to the Consent Judgment.  Indeed, Walker admits in his Second Amended Complaint that he was not a member of the settlement class. Doc. #293 at p. 10, n. 3. The Consent Judgment, to which Walker is not a party, specifically states that any admissions made therein are not admissible if presented by "Third Parties" in another proceeding. Although Walker acknowledges that he is not a party to the consent decree, he contends that he should be able to use the findings of unconstitutional conditions contained in Judge Africk's Order Approving Consent Judgment and Certifying Settlement Class because he was an inmate at OPP during the time discussed therein, and he was a named plaintiff in Jones when it was filed.

Judge Africk's Order Approving Consent Judgment and Certifying Settlement Class is predicated on the existence of the Consent Judgment.  In that Order, Judge Africk noted that "[b]y choosing to enter into a consent judgment, the parties may 'avoid the collateral effects of adjudicated guilt.'" Jones, 296 F.R.D. at 463 (quoting City of Jackson, 519 F.2d at 1152 n. 9).  A consent decree does not have issue preclusive effects unless the parties thereto enter into an agreement stating such an intention.  Kaspar Wire Works, 575 F.2d at 539.  Walker is not a party to the Consent Judgment, and Judge Africk's Order Approving Consent Judgment and Certifying Settlement Class serves as the court's assurance that the parties entered into a valid agreement the terms of which were not

"unlawful, unreasonable, or inequitable" under the PLRA. City of Jackson, Miss., 519 F.2d at 1151.
There is no support for Walker's contention that the PLRA creates an exception to the precedent of
the United States Court of Appeals for the Fifth Circuit that a consent decree does not have issue
preclusive effect absent the agreement of the parties. Additionally, because Walker was not a party
to the Consent Judgment, the findings contained in the Order Approving Consent Judgment and
Certifying Settlement Class do not have issue preclusive effects as to his claims against defendants
in this litigation. Therefore, Walker's motion for partial summary judgment on his official capacity
claims is DENIED.

**B.    Defendants' Motion to Dismiss**

Defendants argue that Walker's claims against Tyrone Williams, Curtis Lumar, Nurse David
Oates, Kevin Talley, Hazel Bowser and Michael Laughlin should be dismissed because they are
untimely, prejudicial and futile.

Walker argues that his claims against these defendants are timely because the procedural
history of this case demonstrates that the defendants' lack of adequate responses to his discovery
requests justifies applying equitable tolling to his claims against these defendants.

Federal courts apply the state statutes of limitation and tolling provisions to § 1983 claims.
See Burge v. Parish of St. Tammany, 996 F.2d 786, 788 (5th Cir. 1993). Under Louisiana law,
plaintiff's claims are subject to a liberative prescription period of one year. See Jacobsen v. Osborne,
133 F.3d 315, 319 (5th Cir. 1998) (citing Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)). The
events that gave rise to this litigation occurred between October 2011 to April 2012. Walker filed
his original petition on October 15, 2012. He added the defendants at issue on December 3, 2014.

Thus, his claims against them are prescribed on the face of the Second Amended Complaint, unless those claims relate back to the filing of the original complaint or equitable tolling applies.[4]

Because the Louisiana statute of limitations is borrowed in § 1983 cases, Louisiana equitable tolling principles apply. <u>Green v. Doe</u>, 260 Fed. Appx. 717 (5th Cir. 2007) (citing <u>Rotella v. Pederson</u>, 144 F.3d 892, 897 (5th Cir. 1998)); <u>see</u> <u>also</u> <u>Broussard v. Brown</u>, - - - Fed. Appx. - - -, 2015 WL 1543123, at *1 (5th Cir. 4/8/2015) (applying Louisiana law of contra non valentem in an action brought under § 1983).   Under Louisiana law, the doctrine of contra non valentem is a jurisprudential equitable tolling doctrine under which prescription may be suspended when a person cannot file suit. <u>Ashton v. United Parcel Serv.</u>, 147 So.3d 748, 752 (La. Ct. App. 2014).   The Supreme Court of Louisiana has recognized four circumstances where the doctrine of contra non valentem is applied to suspend the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known or reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

<u>Marin v. Exxon Mobil Corp.</u>, 48 So.3d 234, 245 (La. 2010). Contra non valentem is only to be applied in exceptional circumstances and "will not exempt the plaintiff's claim from the running of

---

[4]  Walker admits that Rule 15(c)(1) of the Federal Rules of Civil Procedure, which specifies when an amended complaint may relate back to the filing of the original complaint, does not apply.

prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." Id. at 245-46.  "Further, 'prescription runs from the date on which [a plaintiff] first suffered actual and appreciable damage, . . . even though he may thereafter come to a more precise realization of the damages he has already incurred or incur further damages as a result of the completed tortious act.'" Id. at 246.

Walker argues that contra non valentem applies in this case because he was unable to identify these defendants and assert his claims against them due to the other defendants' fault in failing to provide meaningful discovery responses.

A review of the record demonstrates that Walker was aware of these defendants and his potential claims against them when he filed his April 29, 2013, witness list.  That witness list identifies Tally, Bowser and Loughlin as SOD detectives who conducted investigations into Walker's complaints.  It also specifically lists Oats as a nurse at OPP.  Further, the April 29, 2013, witness list includes "Sgt. ? Lumer" and "Mole Sgt ? Williams."  Thereafter, defendants informed Walker that he was attempting to list "Sgt. Curtis Lumar."  Walker could have discerned from this letter that "Sgt. ? Lumer" was actually "Sgt. Curtis Lumar."  Moreover, Walker's April 29, 2013, witness list states that Williams had been a day shift sergeant on the tenth floor for many years.  This information was sufficient for him to state a claim against Williams.  Thus, Walker had sufficient information to name these defendants when he filed his June 6, 2013, motion for leave to amend the complaint to include John and Jane Doe defendants.  He did not attempt to name them as defendants until February 10 and 24, 2014, after the time for filing amended pleadings set forth in the Scheduling Order had passed, and almost two years after he was transferred out of OPP.  Therefore, the doctrine of contra non valentem does not apply to equitably toll prescription on Walker's claims

15

against these defendants.  Because Walker's claims against Williams, Lumar, Oates, Talley, Bowser and Laughlin are untimely, defendants' motion to dismiss is GRANTED, and Walker's claims against those defendants are DISMISSED WITH PREJUDICE.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on his Official Capacity Claims (Doc. #305) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss plaintiff's claims against Tyrone Williams, Curtis Lumar, Nurse David Oates, Krystal Lacking, Kevin Talley, Hazel Bowser and Michael Laughlin (Doc. #320) is **GRANTED**, and plaintiff's claims against those defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this __15th__ day of May, 2015.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**